1   HUESTON HENNIGAN LLP
    John C. Hueston, State Bar No. 164921
2   jhueston@hueston.com
    Steve N. Feldman, State Bar No. 281405
3   sfeldman@hueston.com
    620 Newport Center Drive, Suite 1300
4   Newport Beach, CA 92660
    Telephone: (949) 229-8640
5   Facsimile: (888) 775-0898

6   Attorneys for Defendants
    Umeken, U.S.A., Inc. and Brian Han
7

8                  UNITED STATES DISTRICT COURT

9        CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

10

11  MIN SOOK SHIN, Individually and On          Case No. 8:17-cv-00315 CJC-SS
    Behalf of All Others Similarly Situated,
12                                              **DEFENDANTS' NOTICE OF**
            Plaintiffs,                         **MOTION AND MEMORANDUM IN**
13                                              **SUPPORT OF MOTION TO DISMISS**
        vs.                                     **PLAINTIFF'S FIRST AMENDED**
14                                              **COMPLAINT FOR LACK OF**
    UMEKEN, U.S.A., INC., BRIAN HAN,            **SUBJECT-MATTER JURISDICTION**
15  individually, and DOES 1 through 10,        **AND FAILURE TO STATE A CLAIM**

16          Defendants.                         **[Fed. R. Civ. P. 12(b)(1); 12(b)(6)]**

17                                              Date:            August 21, 2017
                                                Time:            1:30 p.m.
18                                              Courtroom:       9B
                                                Date Action Filed: February 22, 2017
19

20

21

22

23

24

25

26

27

28

1  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2  **PLEASE TAKE NOTICE** that on August 21, 2017 at 1:30 p.m., or as soon

3  thereafter as this motion may be heard, in Courtroom 9B at the United States

4  Courthouse, located at 411 W. Fourth St., Santa Ana, CA, 92701, Defendants Umeken,

5  U.S.A., Inc. and Brian Han will and hereby do move to dismiss this action under Rule

6  12(b)(6) of the Federal Rules of Civil Procedure.

7  This Motion is based on the pleadings and papers filed in this action, the

8  accompanying Memorandum of Points and Authorities, and such other matters as may

9  be presented in connection with the hearing on the motion.  This motion is made

10  following the conference of counsel pursuant to L.R. 7-3 which took place on July 10,

11  2017.

12

13  Dated: July 12, 2017                Respectfully submitted,

14                                      HUESTON HENNIGAN LLP

15

16                          By:   *John C. Hueston*

17                                John C. Hueston
                                  Attorney for Defendants Umeken,
18                                U.S.A., Inc. and Brian Han

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM IN SUPPORT
OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT
5122796

1

# TABLE OF CONTENTS

2

Page

3

MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 1

I.       INTRODUCTION ................................................................................... 1

II.      FACTUAL AND PROCEDURAL BACKGROUND ..................................... 3

III.     APPLICABLE LEGAL STANDARDS ...................................................... 7

         A.    Dismissal For Lack Of Subject-Matter Jurisdiction ............................. 7

         B.    Dismissal For Failure To State A Claim ............................................ 7

IV.      ARGUMENT ....................................................................................... 8

         A.    Plaintiff Lacks Standing To Pursue Any Claims Based On
               21 C.F.R. § 101.93 ..................................................................... 8

         B.    All Of Plaintiff's Claims Fail To Satisfy Rule 9(b) ........................... 10

         C.    Plaintiff's "Unmarketability" Theory Is Untenable ............................. 17

         D.    Dismissal Should Be With Prejudice ................................................ 18

V.       CONCLUSION ................................................................................... 18

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

5122796

## TABLE OF AUTHORITIES

Page(s)

<u>**Cases**</u>

*Aloudi v. Intramedic Research Grp.*,
 2015 WL 4148381 (N.D. Cal. July 9, 2015) ........................................... 14, 16

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ......................................................................... 7

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ......................................................................... 7

*Beneficial Standard Life Ins. Co. v. Madariaga*,
 851 F.2d 271 (9th Cir. 1988) ......................................................... 16

*Birdsong v. Apple, Inc.*,
 590 F.3d 955, 958  (9th Cir. 2009) ................................................ 17

*Bitton v. Gencor Nutrients, Inc.*,
 654 Fed. Appx. 358 (9th Cir. 2016) .............................................. 16

*Bly-Magee v. California*,
 236 F.3d 1014 (9th Cir. 2001) ................................................... 8, 12

*Bronson v. Johnson & Johnson, Inc.*,
 2013 WL 1629191 (N.D. Cal. Apr. 16, 2013) ............................... 13

*Colwell v. Dep't of Health and Human Servs.*,
 558 F.3d 1112 (9th Cir. 2009) ......................................................... 7

*Dachauer v. NBTY, Inc.*,
 2017 WL 2304209 (N.D. Cal. May 26, 2017) ............................... 14

*Eckler v. Wal-Mart Stores, Inc.*,
 2012 WL 5382218 (S.D. Cal. Nov. 1, 2012) ........................... 13, 15

*Estate of Gottdiener v. Sater*,
 35 F. Supp. 3d 386 (S.D.N.Y. 2014) ............................................ 16

*Forkin v. Paine Webber, Inc.*,
 1988 WL 150691 (C.D. Ill. Nov. 29, 1988) ................................. 16

*Gallagher v. Bayer AG*,
 2015 WL 1056480 (N.D. Cal. Mar. 10, 2015) .............................. 13

*Guebara v. Allstate Ins. Co.*,
 1997 WL 33322250 (S.D. Cal. June 4, 1997) ............................... 17

*Kissel v. Omega Natural Science, Inc.*,
 2016 WL 9019613 (C.D. Cal. Aug. 22, 2016) ................................. 9

*Kwan v. SanMedica Int'l, LLC*,
 2015 WL 848868 (N.D. Cal. Feb. 25, 2015) ........................... 13, 15

- ii -

## TABLE OF AUTHORITIES (cont.)

Page(s)

*Nathanson v. Polycom, Inc.,*
    87 F. Supp. 3d 966 (N.D. Cal. 2015) ........................................................... 17

*PLANS, Inc. v. Sacramento City Unified Sch. Dist.,*
    319 F.3d 504 (9th Cir. 2003) ......................................................................... 7

*Snyder v. Fed. Home Loan Mortg. Corp.,*
    2012 WL 2327719 (N.D. Cal. June 19, 2012) ............................................ 18

*Spokeo, Inc. v. Robins,*
    136 S.Ct. 1540 (2016) ............................................................................... 8, 9

*UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.,*
    117 F. Supp. 3d 1092 (C.D. Cal. 2015) ...................................................... 10

*United States v. Hays,*
    515 U.S. 737 (1995) ...................................................................................... 7

*Vess v. Ciba-Geigy Corp., USA,*
    317 F.3d 1097 (9th Cir. 2003) ........................................................ 8, 10, 12

*Warth v. Seldin,*
    422 U.S. 490 (1975) ...................................................................................... 7

## **Statutes**

15 U.S.C. § 2301 ................................................................................ 6, 17

18 U.S.C. § 1861 ...................................................................................... 2

21 U.S.C. § 343 ........................................................................................ 9

Cal. Bus. & Prof. Code § 17200 ............................................................. 6

Cal. Bus. & Prof. Code § 17204 ........................................................... 10

Cal. Bus. & Prof. Code § 17500 ............................................................. 6

Cal. Bus. & Prof. Code § 17535 ........................................................... 10

Cal. Civ. Code § 1750 ............................................................................. 6

Cal. Civ. Code § 1780 ........................................................................... 10

## **Rules**

Fed. R. Civ. P. 9(b) ...................................................................... passim

Fed. R. Civ. P. 23 .................................................................................... 6

DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM IN SUPPORT
OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

5122796

<u>TABLE OF AUTHORITIES</u> (cont.)

<u>Page(s)</u>

**<u>Regulations</u>**

21 C.F.R § 101.93 ............................................................................................. 5, 6, 8, 9

DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM IN SUPPORT
OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

5122796

1

### MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.  INTRODUCTION

3  This is Plaintiff Min Sook Shin's second attempt to state a claim against

4 Defendants Umeken, U.S.A., Inc. ("Umeken"), a leading dietary supplement

5 manufacturer, and Umeken's President and CEO, Brian Han (together, "Defendants")

6 in this putative class action lawsuit over dietary supplement labeling.  This Court

7 dismissed Plaintiff's Complaint in its entirety on June 2, correctly ruling that Plaintiff

8 lacked standing to pursue most of her causes of action and that she had failed to state

9 a claim on the rest.  (*See* Dkt. 23.)  All in all, the Court dismissed, with prejudice,

10 Plaintiff's claims relating to thirteen out of fifteen products, Plaintiff's primary theory

11 of liability on the remaining two products, and all the injunctive relief Plaintiff sought,

12 including her request to certify an injunctive relief class. The Court permitted Plaintiff

13 leave to amend the remaining portions to see if she could "provide the Court and

14 litigants with a coherent Complaint asserting viable claims." (*Id.* at 18.)  Simply put,

15 Plaintiff has not done so.  Like her Complaint, Plaintiff's First Amended Complaint

16 ("FAC") relies on untenable legal theories with scant factual support.

17  Plaintiff's original Complaint argued that websites for the two dietary

18 supplements she purchased (and thirteen others) made unlawful "disease claims," in

19 violation of California law.  After the Court agreed with Defendants that that theory

20 was preempted by federal law (and that Plaintiff could not sue on products she did not

21 purchase anyway), Plaintiff went hunting for another.  Now she is back, arguing that

22 Umeken's websites have noncompliant disclaimers.  While Plaintiff acknowledges

23 that the relevant websites actually ***do contain*** the disclaimers prescribed by federal

24 regulations, she complains that the disclaimers (a) are not in boldface and (b) do not

25 contain enough asterisks.  Plaintiff also recycles a losing theory from her original

26 Complaint: that the websites make misleading "structure/function" statements.  Based

27 on these tenuous theories, Plaintiff asserts nine causes of action, including—

28

1    remarkably—a civil RICO[1] claim against Mr. Han.  For several reasons, Plaintiff's

2    claims fail and should be dismissed with prejudice.

3        *First*, Plaintiff lacks standing to pursue *any* claims based on the allegedly

4    inadequate disclaimers, since she does not allege she was harmed by the disclaimers.

5    Article III standing requires that a plaintiff suffer harm that is fairly traceable to a

6    defendant's conduct, but here—whether or not the disclaimers were compliant—

7    Plaintiff has not alleged that the disclaimers served any role at all in her decision to

8    purchase the supplements at issue.

9        *Second*, Plaintiff's FAC, which sounds in fraud, fails to plead its allegations

10   with the specificity required by Federal Rule of Civil Procedure 9(b).  For example,

11   Plaintiff still fails to allege how *any* of the statements made on Umeken's product

12   labels or website is false.   And rather than making factual allegations about the

13   supplements' effectiveness, all Plaintiff can manage to do is repeat her belief that the

14   supplements did not work for her—an allegation courts routinely dismiss as

15   insufficient under Rule 9(b).  Plaintiff's failure to plead consistent with Rule 9(b) also

16   means that she cannot maintain her baseless RICO claim against Mr. Han.  (Her RICO

17   claim is deficient for other reasons as well, as described below.)   These pleading

18   defects require the dismissal of Plaintiff's *entire* FAC.

19       *Third*, in an effort to find a fraud claim where none exists, Plaintiff incorrectly

20   argues that by purportedly not including enough asterisks or boldface in the website

21   disclaimers, Defendants actually defrauded consumers by marketing unmarketable

22   products.   The Court should reject this transparent attempt to bootstrap a lucrative

23   fraud claim onto an alleged violation of an obscure technical labeling statute.

24       For the foregoing reasons, and as set forth below, Defendants respectively

25   request that the Court dismiss Plaintiff's complaint, with prejudice, in its entirety.

26

27   _____

28   [1] The Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1861 *et seq.*

## II.     FACTUAL AND PROCEDURAL BACKGROUND

According to the FAC,[2] Umeken manufactures, markets, and sells certain dietary supplements.  (Dkt. 25 [First Am. Compl. ("FAC")] ¶ 3.)  Umeken makes a variety of representations regarding the nature and purpose of its dietary supplements, both on the supplements' physical labels and in advertisements "in various media, including the Internet."  (*Id.* ¶ 7.)  In May 2016, after apparently seeing Umeken's advertisements on "Google, Amazon, [and Umeken's] websites," as well as "in [Umeken's] store in Buena Park," Plaintiff decided to purchase two of Umeken's products: Zakuro Balls Pomegranate Plus CoQ10 ("Zakuro Balls") and C-Balance (Chewable) ("C-Balance").  (*Id.* ¶¶ 5, 8, 21.)  Plaintiff paid $176 for the products.  (*Id.* ¶ 9.)

In December 2016, Plaintiff stopped taking Zakuro Balls and C-Balance because she did not believe the supplements were having their desired effects.  She then filed this action in February 2017, alleging that fifteen of Umeken's dietary supplements were deceptively and unlawfully advertised: the two she purchased and thirteen others.  Defendants moved to dismiss, and on June 1, 2017, the Court granted their motion in its entirety, finding that (1) Plaintiff lacked standing to pursue claims based on products she did not purchase, (2) Plaintiff lacked standing to seek injunctive relief, (3) Plaintiff's claim that the products at issue made unlawful "disease claims" was preempted by federal law, and (4) Plaintiff's remaining claims, which all relied on allegations of fraud, failed to comply with the pleading requirements of Federal Rule of Civil Procedure 9(b).  (*See generally* Dkt. 23.)  The Court dismissed ***all*** of Plaintiff's claims, many with prejudice, but granted Plaintiff thirty days' leave to amend to see if she could "provide the Court and litigants with a coherent Complaint asserting viable claims."  (*Id.*)

---

[2] Defendants dispute many of the FAC's factual allegations.

5122796

Plaintiff filed her FAC on June 28, 2017. (Dkt. 25.) Like Plaintiff's original Complaint, her FAC alleges that Umeken's products make certain misleading statements that tricked her and other members of the putative class into buying "worthless" products. (FAC ¶ 11.) The statements identified by Plaintiff do not appear on the physical labels of the products she purchased. Instead, Plaintiff alleges that Umeken's website, <www.umekenusa.com>, makes the following misleading statements regarding C-Balance:

- "Helps you maintain beautiful, firm skin, and helps reduce spots from your skin."
- "Help aid reduce wrinkles."

(FAC ¶ 5.)

As for Zakuro Balls, Plaintiff only identifies one allegedly problematic statement from <www.umekenusa.com>: that the product "supports her skin." (*Id.* ¶ 77.)[3] She separately quotes four statements allegedly made about Zakuro Balls on a different website, <www.famousherbs.com>:

- "Recommended for women experiencing menopausal symptoms."
- "Supports women health and their skin."
- "Middle-aged women can experience a decline of estrogen secretion, but now they can unlock the secret to beautiful skin and beautiful health – Umeken's Zakuro Balls."
- "Women entering menopause, those who have skin troubles, constant fatigue, mood changes, and those experiencing menopausal symptoms, such as hot flashes, irregular menstruation, decrease in sexual appetite, and insomnia."

(*Id.* ¶ 5.)

---

[3] The factual basis for this allegation is unclear. Plaintiff attaches, as an exhibit to her FAC, what appears to be a printout of a product page from <www.umekenusa.com> for Zakuro Balls, but the printout does not contain a statement claiming that Zakuro Balls "supports" skin health. (FAC Ex. 2.)

- 4 -

The FAC does not allege any facts about a connection between either Umeken or Mr. Han and <www.famousherbs.com>.  Nor does Plaintiff explain why she believes Umeken is responsible for the content of the statements on that website, beyond vague suggestions that <www.famousherbs.com> may be one of "Defendant's [sic] websites" or contain an "advertisement" for Umeken.  (FAC ¶¶ 5, 9.)

At any rate, Plaintiff alleges that she was "defrauded" by Defendants because she was "fraudulently induced to buy unmarketable dietary supplements" and because the supplements "did not support her skin," "did not remove her constant fatigue," "did not remove her mood changes," "did not remove her insomnia," "did not help reduce spots from her skin," and "did not help aid reduce wrinkles."  (FAC ¶ 77.)  Because she did not herself experience these effects, Plaintiff alleges, Umeken's products are "falsely and deceptively advertised."  (*Id.* ¶ 11.)  Plaintiff does not allege any facts at all about the severity of her alleged symptoms before or after taking C-Balance or Zakuro Balls.

Nor is Plaintiff precise about which misleading statements she saw, on which websites, or when.  She alleges, alternatively, that she "saw advertisements searched and found [sic] in Google, Amazon, and Defendant's websites," (*id.* ¶ 21), that she "read . . . misleading statements regarding the UMEKEN'S [sic] Products in the [unspecified] websites," (*id.* ¶ 48), and that she was defrauded by "statements on the UMEKEN'S Products viewed from <www.umekenusa.com>, <www.famousherbs.www> [sic], and google and amazon websites," (*id.* ¶ 77).  She is similarly imprecise as to when she actually viewed the advertisements, ultimately settling on "sometime in 2015 and May 2016."  (*Id.* ¶ 77.)

Plaintiff also asserts another theory of liability.  According to the FAC, Zakuro Balls and C-Balance are subject to federal labeling requirements set forth in 21 C.F.R § 101.93.  That section requires dietary supplements which make particular statements to bear a disclaimer, the text of which is specified in 21 C.F.R. § 101.93(c).  Plaintiff acknowledges that the statements on <www.umekenusa.com> contain the required

- 5 -

disclaimer, but she complains that the disclaimer is not in boldface, as required by 21 C.F.R. § 101.93(e), and that the disclaimer is "linked" to only some of, and not all, the associated statements by an asterisk, in violation of 21 C.F.R. § 101.93(d).  (FAC ¶¶ 36-37.)   Plaintiff also alleges that the "advertisement" for Zakuro Balls on <www.famousherbs.com> does not contain the disclaimer at all.  (*Id.* ¶ 38.)  Plaintiff does not allege that she either read or misunderstood the disclaimers on <www.umekenusa.com> and does not say that the alleged deficiencies in their form— no boldface and not enough asterisks—influenced her decision to purchase Defendants' products.

Based on these two theories, Plaintiff asserts nine causes of action: eight against Umeken and one against Mr. Han.  Against Umeken, Plaintiff alleges violations of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.* (First and Second Causes of Action), violations of the California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.* (Third); violations of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civil Code § 1750 *et seq.* (Fourth); breach of quasi contract (Fifth); breach of the implied warranty, in violation of the Magnuson Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* (Seventh); and both fraudulent and negligent misrepresentation (the Eighth and Ninth Causes of Action, respectively).  Plaintiff's Sixth Cause of Action, for civil RICO violations, is alleged only against Mr. Han.  (*See* FAC ¶¶ 78-155.)

Plaintiff also seeks class certification under Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3).  (FAC ¶¶ 69, 71.)  In addition to a RICO class, Plaintiff proposes a "Monetary Relief Class," and a "California Subclass," with different class member definitions.  (*Id.* ¶¶ 70-76.)

Based on these alleged wrongs, Plaintiff prays for compensatory damages, attorneys' fees, restitution and disgorgement, treble damages under the RICO statute, and—because Defendants' allegedly misleading claims and noncompliant labels "constitute[] despicable conduct which was carried on by Defendant[s] with a willful

1  and conscious disregard of the rights or safety of others and otherwise subjected

2  Plaintiff and members of the Classes to a cruel and unjust hardship"—punitive

3  damages.  (FAC ¶ 146; *id.* at 35.)

4  **III.    APPLICABLE LEGAL STANDARDS**

5        **A.    Dismissal For Lack of Subject Matter Jurisdiction**

6        Article III limits the jurisdiction of the federal courts to "live cases and

7  controversies." *PLANS, Inc. v. Sacramento City Unified Sch. Dist.*, 319 F.3d 504, 507

8  (9th Cir. 2003).  When a plaintiff lacks constitutional standing, no case or controversy

9  is present, and the court must dismiss for lack of subject matter jurisdiction. *Warth v.*

10  *Seldin*, 422 U.S. 490, 501-02 (1975).  Standing is "perhaps the most important of the

11  jurisdictional doctrines" and is not subject to waiver.  *United States v. Hays*, 515 U.S.

12  737, 742 (1995).  The burden of establishing standing "rests on the party asserting the

13  claim."  *Colwell v. Dep't of Health and Human Servs.*, 558 F.3d 1112, 1121 (9th Cir.

14  2009).  Motions to dismiss for lack of subject matter jurisdiction are properly made

15  under Federal Rule of Civil Procedure 12(b)(1).

16        **B.    Dismissal For Failure To State A Claim**

17        To state a claim upon which relief can be granted, a plaintiff must plead "enough

18  facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*,

19  550 U.S. 544, 570 (2007), and she must plead those facts with enough specificity "to

20  raise a right to relief above the speculative level," *id.* at 555.  "A claim has facial

21  plausibility when the plaintiff pleads factual content that allows the court to draw the

22  reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*

23  *v. Iqbal*, 556 U.S. 662, 678 (2009).  A court is "not bound to accept as true a legal

24  conclusion couched as a factual allegation[.]"  *Id.* at 678 (internal quotation marks

25  omitted).  "[T]hreadbare recitals of the elements of a cause of action, supported by

26  mere conclusory statements, do not suffice."  *Id.*

27        Claims sounding in fraud must "state with particularity the circumstances

28  constituting fraud."  Fed. R. Civ. P. 9(b).  This means that allegations of fraud must

1  "be specific enough to give defendants notice of the particular misconduct . . . so that

2  they can defend against the charge[.]"  *Bly-Magee v. California*, 236 F.3d 1014, 1019

3  (9th Cir. 2001).  When claiming fraud, a plaintiff must state the "who, what, when,

4  where, and how of the misconduct charged" in order to defeat a motion to dismiss.

5  *Vess v. Ciba-Geigy Corp., USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

6  **IV.    ARGUMENT**

7        **A.    Plaintiff Lacks Standing To Pursue Any Claims Based On 21 C.F.R.**

8             **§ 101.93**

9        As an initial matter, Plaintiff lacks standing to pursue *any* claims based on

10  alleged violations of 21 C.F.R. § 101.93, which defines particular requirements for

11  disclaimers accompanying dietary supplement labels.  Constitutional standing requires

12  plaintiffs to allege, among other things, an "injury in fact" that is "fairly traceable to

13  the challenged conduct of the defendant."  *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540,

14  1547 (2016).  "Article III standing requires a concrete injury even in the context of a

15  statutory violation."  *Id.* at 1543.  But Plaintiff does not allege she was *actually harmed*

16  by any violation of 21 C.F.R. § 101.93, so she does not have standing to pursue claims

17  based on that regulation—even if violations of it occurred.

18        Federal regulations provide that any dietary supplements label making what is

19  known as a "structure/function" statement[4] must bear a disclaimer announcing,

20        This statement has not been evaluated by the Food and Drug
      Administration. This product is not intended to diagnose, treat, cure, or
21        prevent any disease.

22  21 U.S.C. § 343(r)(6)(C).  The disclaimer "shall appear in boldface type in letters of a

23  typesize no smaller than one-sixteenth inch" and "shall be placed adjacent to the

24

25  ─────────────────────
26  [4] A "structure/function" statement is a statement that "describes the role of a nutrient
   or dietary ingredient intended to affect the structure or function in humans." 21 U.S.C.
   § 343(r)(6)(A).   Structure/function statements are distinct from "disease claims,"
27  which are claims that a product will "diagnose, mitigate, treat, cure, or prevent a
   specific disease or class of diseases." *Id.* § 343(r)(6)(C). The Court found that the
28  claims on Defendants' products are "not disease claims," but "permissible
   structure/function claims." (Dkt. 23 at 13.)

[structure/function] statement with no intervening material or linked to the statement with a symbol (e.g., an asterisk) at the end of each such statement[.]"  21 C.F.R. § 101.93(d)-(e).  In the case of pamphlets or catalogs, the disclaimer must "appear on each panel or page where there is [a structure/function] statement."  *Id.* § 101.93(d).

The required disclaimer unquestionably appears on <www.umekenusa.com>'s product pages for both C-Balance and Zakuro Balls, linked by an asterisk to the text describing the products.  (FAC Ex. 1 at 2; *id.* Ex. 2 at 2.)  Yet Plaintiff insists the disclaimers are inadequate because they do not appear in boldface and because Umeken chose to put a single asterisk at the end of the product description, rather than an asterisk at the end of every sentence that could possibly be construed as a structure/function statement.  Defendants dispute Plaintiff's reading of § 101.93's requirement, but in the end, it does not matter, since Plaintiff does not allege that she was harmed by any disclaimer: compliant or not.  She does not say that she was confused by any disclaimer, that she believed any disclaimer only applied to some statements, or that she did not notice the disclaimers (but would have if they had been in boldface).  Indeed, Plaintiff does not say ***anything*** about any effect the disclaimers (or their alleged inadequacies) had on her decision to purchase either C-Balance or Zakuro Balls—presumably because there was no effect whatsoever.[5]  She has therefore suffered no "injury in fact" that is "fairly traceable" to the absence of the disclaimer, and she does not have standing to pursue any relief based on the disclaimer.  *Spokeo*, 136 S.Ct. at 1547; *see also Kissel v. Omega Natural Science, Inc.*, 2016 WL 9019613, at *4 (C.D. Cal. Aug. 22, 2016) ("Because Plaintiff has failed to allege any actual harm

---

[5] The same is true of the Zakuro Balls product page at <www.famousherbs.com>, which Plaintiff alleges does not contain the disclaimer at all.  As discussed below, Plaintiff does not properly allege that either Defendant controls <www.famousherbs.com> or is responsible for any statements on that website.  But even if she did, she does not allege that she was harmed by the absence of any disclaimer.

1  as a result of the alleged failure to provide the acknowledgement, the Court would find

2  that Plaintiff lacks standing.").**6**

3  ### B.  Plaintiff's Claims All Fail To Satisfy Rule 9(b)

4  Given that Plaintiff lacks standing to pursue claims based on the disclaimers, ***all***

5  of her remaining claims necessarily rely on her theory that C-Balance and Zakuro Balls

6  make false or misleading structure/function statements—i.e., fraud.**7** But Plaintiff fails

7  to "state with particularity the circumstances constituting fraud," as required by

8  Federal Rule of Civil Procedure 9(b).  As such, the entire Complaint is subject to

9  dismissal.  "Averments of fraud must be accompanied by the who, what, when, where,

10 and how of the misconduct charged." *Vess*, 317 F.3d at 1106 (internal quotation marks

11 and citation omitted).  It is not enough for a plaintiff to allege only "the neutral facts

12 necessary to identify [a] transaction." *Id.*  Instead, she must "set forth what is false or

13 misleading about a statement, and why it is false." *Id.*  And, specifically, when an

14 artificial entity is the alleged perpetrator of the fraud, the plaintiff must "allege the

15 names of the persons who made the allegedly fraudulent representations, their

16 authority to speak, to whom they spoke, what they said or wrote, and when it was said

17 or written." *UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*, 117 F. Supp. 3d 1092,

18 1107 (C.D. Cal. 2015).

19 Plaintiff fails to do so here.  Indeed, her Complaint does not properly plead ***any***

20 of the "who, what, when, where, and how" of fraud.  As to "who" and "where,"

21 Plaintiff once again blurs statements made on some indeterminate number of websites,

22

---

23 **6** Additionally, even if Plaintiff had Article III standing to pursue claims based on the
   allegedly defective disclaimers, she would not have statutory standing to pursue her
24 UCL, CLRA, and FAL claims based on those disclaimers.  The UCL requires that a
   plaintiff have "suffered injury in fact and ha[ve] lost money or property as a result of
25 the unfair competition." Cal. Bus. & Prof. Code § 17204; *id.* § 17535 (same, for FAL);
   *see also* Cal. Civ. Code § 1780 (requiring that plaintiffs in CLRA actions have
26 "suffer[ed] . . . damage" from a violation).  Plaintiff does not plead that the disclaimers
   caused her any damage or that she relied on the disclaimers when purchasing the
27 products at issue.

28 **7** Each of Plaintiff's causes of action alleges a misrepresentation.  (*See* FAC ¶¶ 87-
   89, 95, 102, 107, 114-15, 119, 137, 141-43, 150-53.)

5122796

including <www.umekenusa.com>, <www.famousherbs.com>, and "other websites such as Google, and Amazon." (FAC ¶¶ 5, 67.) Yet Plaintiff makes *no* effort to delineate which statements on which websites are actually fraudulent or, for that matter, actually attributable to Umeken and Mr. Han. Instead, she appears to believe that Umeken is potentially liable for any statements, anywhere on the Internet, about its products. The Court noted the error of this view when it granted Defendants' first motion to dismiss, observing that Plaintiff had alleged that "www.amazon.com contained fraudulent misrepresentations without an accompanying allegation that Umeken is liable for the statements on Amazon." (Dkt. 23 at 18.) Yet despite this warning, Plaintiff's FAC fares no better, alleging that the "where" of the fraud includes "google and amazon websites," with no factual allegations whatsoever regarding which websites Umeken does and does not control. (FAC ¶ 77.)

This problem is particularly glaring as to <www.famousherbs.com>, on which Plaintiff relies for several statements relating to Zakuro Balls. Aside from a conclusory allegation that seems to identify <www.famousherbs.com> as one of "Defendant's [sic] websites," (*id.* ¶ 5), all Plaintiff offers is the allegation that the statements on <www.famousherbs.com> constitute "Defendant Umeken's advertisement," (*id.* ¶ 38).[8] This allegation is nonsensical; as shown in Plaintiff's own Exhibit 3 to the FAC, the Zakuro Balls page on <www.famousherbs.com> is a *product listing*, not an *advertisement*. (*See* FAC Ex. 3.) Plaintiff's inability to particularly allege which allegedly false statements appear where and were made by whom precludes her from stating a claim under Rule 9(b).

Similarly, Plaintiff still will not say *when* she viewed *which* advertisements. She alleges, as she did in her initial Complaint, that she "learned about the UMEKEN'S

---

[8] When Defendants pointed out in a motion to dismiss that Plaintiff had not properly alleged they were responsible for <www.famousherbs.com>, Plaintiff absurdly accused them of attempting to "make a big deal" out of that website. (Dkt. 19 at 8.) Plaintiff has alleged fraud and RICO claims based on statements on a website for which she has not alleged Defendants are responsible. It is not Defendants who are attempting to "make a big deal" out of <www.famousherbs.com>.

[sic] Products in 2015 when she saw advertisements"—she does not say which ones—"searched and found [sic] in Google, Amazon, and Defendant's websites[.]" (FAC ¶ 21.) Plaintiff also says that she was "exposed to and reviewed the advertisements"—again, no specificity on which ones, or where—"in or around May 2016." (*Id.* ¶ 8.) These allegations do not even approach the Rule 9(b) bar. Defendants are entitled to know which statements Plaintiff is alleged to have seen and relied on, where she saw them, and when she saw them. *See Bly-Magee*, 236 F.3d at 1019. Plaintiff's refusal to put Defendants on notice of the particulars of her fraud causes of action means she cannot state a claim under Rule 9(b).

Perhaps the most significant problem with Plaintiff's fraud theory, however, is that she still has not alleged ***how*** any particular structure/function statement on Umeken's products is false. *See Vess*, 317 F.3d at 1106 (requiring a plaintiff to "set forth what is false or misleading about a statement, and ***why it is false***") (emphasis added). The Court noted in its previous order that the Complaint "fail[ed] to allege *how* the claims made by Umeken about C-Balance (Chewable) and Pomegranate Balls CoQ10 were false," and that Plaintiff had "fail[ed] to allege with particularity her experience with [the products]." (Dkt. 23 at 18 (emphasis in original).) The FAC does no better on either of these scores. All Plaintiff adds to the inadequate allegations of her original Complaint is that she stopped taking the two supplements because Zakuro Balls "did not support her skin," "did not remove her constant fatigue," "did not remove her mood changes," and "did not remove her insomnia," and because C-Balance "did not help reduce spots from her skin" or "help aid reduce wrinkles." (FAC ¶ 10.)

As an initial matter, these conclusory statements do not accurately report what the alleged structure/function claims at issue even say. The <www.famousherbs.com> website, for example, does not represent that Zakuro Balls will "remove" any of the conditions Plaintiff identifies. Instead, according to the exhibit Plaintiff herself attached to her Complaint, it asks a question—"Who should take Zakuro Balls?"—

1  which it then answers by listing "among others, "Women . . . .who have . . . constant

2  fatigue, mood changes, and those experiencing menopausal symptoms, such as hot

3  flashes, irregular menstruation, decrease in sexual appetite, and insomnia." (*Id.* Ex.

4  3.) No reasonable reader could construe this language as a representation that Zakuro

5  Balls will *cure* any of the listed conditions. Plaintiff cannot state a fraud claim without

6  first accurately relating the substance of the statements she is attacking.

7       Even if Plaintiff *had* accurately represented the statements at issue, however,

8  her conclusory allegations about how the supplements affected her—which are really

9  no more than the alleged structure/function statements themselves, with the words "did

10  not remove" placed in front of them—are insufficient to state a claim for fraud.

11  Federal district courts agree that when a plaintiff brings misrepresentation claims

12  based on structure/function statements on dietary supplements, she must plead that the

13  statements are ***actually false*** and then ***cite to scientific evidence*** in support. *Gallagher*

14  *v. Bayer AG*, 2015 WL 1056480, at *8 (N.D. Cal. Mar. 10, 2015) ("As courts in

15  California . . . have held, where plaintiffs allege that manufacturer's food or

16  supplement claims are false ***and cite to scientific studies in support,*** those allegations

17  are adequate to plead false and misleading conduct under [California's] consumer

18  protection statutes[.]") (emphasis added); *Bronson v. Johnson & Johnson, Inc.*, 2013

19  WL 1629191, at *8 (N.D. Cal. Apr. 16, 2013) ("A claim can survive a lack of

20  substantiation challenge by, for example, alleging studies showing that a defendant's

21  statement is false."); *Kwan v. SanMedica Int'l, LLC*, 2015 WL 848868, at *5 (N.D.

22  Cal. Feb. 25, 2015) (dismissing false advertising claims because the complaint "cite[d]

23  no study that disprove[d]" the claims at issue); *Eckler v. Wal-Mart Stores, Inc.*, 2012

24  WL 5382218, at *7 (S.D. Cal. Nov. 1, 2012) (dismissing UCL and CLRA claims

25  premised on allegedly false advertising where the plaintiff cited studies that did not

26  "lend facial plausibility to her claims"). Indeed, even plaintiffs who marshal evidence

27  showing that the science behind a structure/function claim "is debatable" cannot

28  prevail on a misrepresentation claim; instead, they must cite to "affirmative evidence

1   of falsity." *Dachauer v. NBTY, Inc.*, 2017 WL 2304209, at *2 (N.D. Cal. May 26,

2   2017).

3       Here, Plaintiff cites to no scientific evidence at all.[9]  Instead, she rests her falsity

4   allegations on the thinnest of reeds: she says that she did not *herself* experience the

5   effects she expected from the products.  (FAC ¶¶ 10, 77.)  But a plaintiff cannot meet

6   Rule 9's strictures by announcing that a product did not work for her as she expected;

7   federal courts routinely reject such allegations as insufficient.  For example, in *Aloudi*

8   *v. Intramedic Research Grp.*, 2015 WL 4148381 (N.D. Cal. July 9, 2015), a plaintiff

9   brought UCL, FAL, and MMWA claims against a manufacturer of a weight loss

10  dietary supplement which advertised that the supplement was "Clinically Proven" to

11  cause a "significant reduction in actual body mass index."  *Id.* at *1.  The plaintiff

12  insisted that this representation was false, citing to his own experience with the

13  product: "Plaintiff used JavaSLIM as directed, but JavaSLIM did not work as

14  advertised, nor provide any of the promised benefits."  *Id.* at *2 (quoting the

15  complaint).  The district court dismissed this allegation out of hand, finding that

16  "Plaintiff's anecdotal experience is not described with the specificity required by Rule

17  9(b); *more must be said to state a claim than 'the product did not work.'*"  *Id.* at *5

18  (emphasis added).

19      Another federal district court in California recently considered anecdotal

20  evidence in a dietary supplement labeling case but found it to be far too speculative

21  and imprecise to state a claim for actual falsity:

22          The Court sees only one allegation, really, that goes beyond the
            substantiation issue: Eckler claims that she took Equate and it didn't do
23          for her what she expected it to: "The Product Plaintiff Eckler purchased
            did not rebuild her cartilage, lubricate her joints or improve her joint

24

---

25  [9] The reason for this, of course, is surely that significant scientific evidence *supports*
    the claims on Defendants' products.  For example, Plaintiff's own Exhibit 1 notes that
26  C-Balance is rich in Vitamin C, and the positive effects of Vitamin C on skin health
    are well-documented in the academic literature.  *See, e.g.*, "Vitamin C and Skin
27  Health,"    http://lpi.oregonstate.edu/mic/health-disease/skin-health/vitamin-C   (last
    accessed July 10, 2017) ("Two observational studies found that higher intakes of
28  vitamin C from the diet were associated with better skin appearance, with notable
    decreases in skin wrinkling.").

5122796

comfort as represented." Of course, how would she actually know that? The health and comfort of joints is probably influenced by a number of variables. Did Eckler keep all of them constant, adjust for ones that can't be kept constant (like aging), and then somehow have her cartilage and joints examined? Did she keep precise records of how much Equate she took, why she took it, and just how long she took it for? Can she document what her physical condition was before she and after she took Equate? Probably not. What's more likely is that she took Equate casually and just didn't feel much better, but that makes her own claims just as speculative as she alleges Equate's benefits are.

*Eckler v. Wal-Mart Stores, Inc.*, 2012 WL 5382218, at *3 n.2 (S.D. Cal. Nov. 1, 2012). Given these inherent problems with personal anecdotes regarding the effectiveness of supplements, the *Eckler* court reasoned that when it comes to dietary supplements, "it's really only scientific testing that can show a supplement's claims to truly be false and/or misleading." *Id.* "That's just the nature of the product at issue." *Id.*

Presumably Plaintiff will cite to *Kwan v. SanMedica Int'l, LLC*, 2015 WL 848868 (N.D. Cal. Feb. 25, 2015), as she did in her opposition to Defendants' initial motion to dismiss. But that case does little for her. There, the plaintiff alleged that a dietary supplement's claim that it was "clinically tested to boost human growth hormone ('HGH') by a mean of 682%" was false and misleading, in violation of California law. *Id.* at *1. In dismissing the plaintiff's complaint, the district court noted (in *dicta*) that plaintiff could have attempted to state a claim for falsity in three ways: he could have alleged (1) that a scientific study "found that [the supplement] does not produce a 682% mean increase in HGH levels," (2) that a scientific study found that such an increase is "impossible to achieve in an over-the-counter pill," or that the plaintiff himself "did not experience **such an increase** when using the product." *Id.* at *2 (emphasis added). This language does *not* mean, as Plaintiff may suggest, that all she must do to state a claim is say, "Umeken's supplements did not work for me." Instead, it means that if a dietary supplement makes a particular, measurable claim that can be verified as untrue in the plaintiff's instance, a plaintiff may be able to state a claim through her own experience. Neither C-Balance nor Zakuro Balls make any such claim, and Plaintiff has not provided **any** detail on her

5122796

1   experience with those two products beyond saying that the statements she is attacking

2   were not true.  Accordingly, she has not met the pleading requirements of Federal Rule

3   of Civil Procedure 9(b).

4          This pleading defect requires the dismissal of all of Plaintiff's causes of action.

5   Her false advertising, negligent misrepresentation, and fraudulent misrepresentation

6   claims plainly rely on allegations of fraud which are required to be pleaded with

7   particularity.  So too with Plaintiff's meritless RICO claim against Mr. Han, for which

8   the alleged predicate acts are mail and wire fraud.  (FAC ¶ 122.); *see also See Bitton*

9   *v. Gencor Nutrients, Inc.*, 654 Fed. Appx. 358, 363 (9th Cir. 2016) (unpublished) (in

10  action alleging a mislabeled dietary supplement, affirming district court's dismissal of

11  RICO claim with prejudice where plaintiff failed to plead fraud with particularity).[10]

12  Plaintiff's seventh cause of action, for violations of the MMWA, is not viable given

13  that she has not alleged that the products at issue have false labels.  *See Aloudi*, 2015

14  WL 4148381, at *4-6 (dismissing MMWA claim based on dietary supplement labeling

15  where plaintiff had not properly alleged that the labeling was false and therefore had

16  not alleged breach of any warranty).[11]  Similarly, her fifth cause of action, for "breach

17

---

18  [10] Plaintiff's RICO claim should be dismissed for other reasons as well.  Even if Plaintiff *had* pleaded the occurrence of fraud, she has not even begun to connect Mr.
19  Han to it, doing no more than speculating that he may have been involved in "approving marketing and advertising materials," "reviewing financial records," and
20  "[n]egotiating and authorizing others to negotiate significant contracts." (FAC ¶ 59.) These allegations are just another way of stating the customary duties of a
21  corporation's president; they do not *begin* to adequately describe facts plausibly supporting a RICO claim.  RICO is "a specialized statute requiring a particular
22  configuration of elements[, which] cannot be incorporated loosely from a previous narration, but must be tightly particularized and connected in a complaint." *Estate of*
23  *Gottdiener v. Sater*, 35 F. Supp. 3d 386, 392-93 (S.D.N.Y. 2014).  It is not designed to address run-of-the-mill state-law fraud cases. *See Beneficial Standard Life Ins. Co.*
24  *v. Madariaga*, 851 F.2d 271, 277 n.7 (9th Cir. 1988) (in a case where RICO and misrepresentation claims "grew out of the same acts of misrepresentation and
25  concealment," complaining about the "ease with which common-law frauds [are] being] transformed into RICO actions"); *see also Forkin v. Paine Webber, Inc.*, 1988
26  WL 150691, at *4 (C.D. Ill. Nov. 29, 1988) ("RICO was not designed [for] . . . common law fraud actions, but rather RICO is a specialized statute only allowing for
27  recovery for breaches of specific types of injury.").

28  [11] Separately, Plaintiff still has not alleged a state law breach of warranty claim upon which her MMWA claim could rest.  *Birdsong v. Apple, Inc.*, 590 F.3d 955, 958 n.2

of quasi contract," indicates that it is based on "Defendant's [sic] deceptive, fraudulent, and misleading labeling," so it too must be dismissed.   (FAC ¶ 114.)   Finally, Plaintiff's two causes of action for violations of the UCL are predicated on Defendants allegedly "making . . . material misrepresentations," in the first instance, and engaging in "fraudulent" conduct, in the second.   (*Id.* ¶¶ 79, 92.)   As Plaintiff has alleged neither a misrepresentation nor any fraudulent conduct, these claims must be dismissed as well.

## C.   Plaintiff's "Unmarketability" Theory Is Untenable

Although it is not well-fleshed-out in the FAC, Plaintiff may be attempting to assert one more theory of recovery.   In Paragraph 77 of the FAC, Plaintiff suggests that her disclaimer and fraud theories interconnect.   The idea seems to be as follows: the allegedly defective disclaimers make C-Balance and Zakuro Balls "unmarketable." (FAC ¶ 77.)   Yet Umeken marketed them anyway, implicitly representing to consumers that the products were "marketable" after all, and thereby defrauding Plaintiff, who believed that the products were "legally marketable."   (*Id.*)

This is pure bootstrapping.   Under Plaintiff's unusual theory, *any* violation of the law can be imagined into a fraud claim by reading the underlying violation as a representation that something which is unlawful is actually lawful.   Courts reject this tortured logic in a variety of areas of law.   *E.g.*, *Nathanson v. Polycom, Inc.*, 87 F. Supp. 3d 966, 973 (N.D. Cal. 2015) ("[S]ecurities plaintiffs cannot 'bootstrap' such breach of fiduciary duty claims into a securities fraud suit[.]"); *Guebara v. Allstate Ins. Co.*, 1997 WL 33322250, at *7 (S.D. Cal. June 4, 1997) ("It appears that Plaintiff is merely 'bootstrapping' a fraud claim onto the breach of contract claim by alleging that Allstate never intended to uphold its end of the deal when it entered into the policy."). This Court should do the same here.

---

(9th Cir. 2009) ("Both parties agree that the plaintiffs' claims under . . . the [MMWA] require the plaintiffs to plead successfully a breach of state warranty law."); *see also* 15 U.S.C. § 2301(7).

DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM IN SUPPORT
OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

5122796

### D.   Dismissal Should Be With Prejudice

Plaintiff has now had two opportunities to plead fraud—the latter after significant guidance from this Court—and has wholly failed to do so adequately. Critically, her FAC is hardly different from her Complaint: in response to an order dismissing most of her claims with prejudice, Plaintiff chose to add *virtually nothing of substance* to her allegations.  She brought no clarity to the question of *when* and *where* she saw *which* statements, making it impossible for Defendants to defend against her claims.  And, worse, she made no substantive attempt to respond to the Court's holding that her initial Complaint "fail[ed] to allege *how* the claims made by Umeken about C-Balance (Chewable) and Pomegranate Balls CoQ10 were false" or "allege with particularity her experience" with those products.  Plaintiff mustered no scientific evidence in support of her fraud claims, instead continuing to assert, without any details, that the products did not have the desired effects for her.  In such a situation, dismissal without leave to amend is appropriate.  *See Snyder v. Fed. Home Loan Mortg. Corp.*, 2012 WL 2327719, at *4 (N.D. Cal. June 19, 2012) (dismissing claim without leave to amend where plaintiff had "multiple opportunities to state his claim" and had "utterly failed to allege facts sufficient to do so").

## V.   CONCLUSION

As demonstrated above, all of Plaintiff's causes of action are subject to dismissal.  She does not have standing to bring any claims based on her first theory of liability—that Defendants' products bore inadequate disclaimers.  And as to her second theory—that the products make material misrepresentations—Plaintiff has still failed to plead which allegedly misleading statements she saw, when she saw them, who was responsible for them, and—most crucial of all—*why they are false*.  This failure to plead consistent with Rule 9(b) dooms her case.  Defendants therefore respectfully request that the Court dismiss Plaintiff's Complaint in its entirety, with prejudice.

1  Dated: July 12, 2017                    Respectfully submitted,

2                                          HUESTON HENNIGAN LLP

3

4                                          By:    /s/ John C. Hueston
                                                  John C. Hueston
5                                                 Attorney for Defendants Umeken,
                                                  U.S.A., Inc. and Brian Han
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM IN SUPPORT
OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

5122796