# JS-6

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

|  |  |
|---|---|
| | ) Case No.: SACV 17-00315-CJC(SSx) |
| | ) |
| MIN SOOK SHIN, individually and on behalf of all others similarly situated, | ) |
| | ) |
| | ) |
| Plaintiff, | ) ORDER GRANTING DEFENDANTS' MOTION TO DISMISS |
| | ) |
| v. | ) |
| | ) |
| UMEKEN, U.S.A., INC., and BRIAN HAN, | ) |
| | ) |
| | ) |
| Defendants. | ) |
| | ) |

## I.  INTRODUCTION

Plaintiff Min Sook Shin filed this case against Defendants Umeken, U.S.A., Inc. ("Umeken"), and Brian Han ("Mr. Han"), alleging nine causes of action arising out of Defendants' advertisement of certain products.  (Dkt. 1.)  Plaintiff filed a Second

Amended Complaint ("SAC") on September 14, 2017.  (Dkt. 33.)  Before the Court is Defendants' motion to dismiss the SAC.  (Dkt. 34 [Motion to Dismiss, hereinafter "Mot."].)  For the following reasons, the motion is GRANTED.[1]

## II.  BACKGROUND

Plaintiff's SAC alleges the following facts.  Umeken manufactures, markets, and sells two products that are purported to be dietary supplements: (1) C-Balance (Chewable) and (2) Pomegranate Balls CoQ10.  (SAC ¶¶ 2–3.)  Brian Han is the President and CEO of Umeken.  (*Id.* ¶ 22.)  Plaintiff bought C-Balance (Chewable) and Pomegranate Balls CoQ10 from Umeken Health Plaza in Buena Park, California.  (*Id.* ¶ 21.)  Plaintiff alleges that Umeken's website, www.umekenusa.com, makes the following claims about these two products:

1. C-Balance (Chewable)
    i. Helps you maintain beautiful, firm skin, and helps reduce spots from your skin.
    ii. Help aid reduce wrinkles.
2. Pomegranate Balls CoQ10
    i. Recommended for women experiencing menopausal symptoms.
    ii. Supports women health and their skin
    iii. Middle-aged women can experience a decline of estrogen secretion, but now they can unlock the secret to beautiful skin and beautiful health - Umeken's Zakuro Balls.
    iv. Women entering menopause, those who have skin troubles, constant fatigue, mood changes, and those experiencing menopausal symptoms, such as hot flashes, irregular menstruation, decrease in sexual appetite, and insomnia.

(*Id.* ¶ 5.)

---

[1] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing.  *See* Fed. R. Civ. P. 78; Local Rule 7-15.  Accordingly, the hearing set for October 30, 2017, at 1:30 p.m. is hereby vacated and off calendar.

Plaintiff also alleges that the claims regarding Pomegranate Balls CoQ10 are made on the website www.famousherbs.com.  (*Id*.)  Plaintiff alleges that "[r]easonable consumers knew that Defendants controlled or placed the cited statements about Pomegranate Balls CoQ10 on www.famousherbs.com.  The website refers to 'Umeken USA Information Booklet, Nature is Healer.'  The website refers to www.umekensusa.com and UMEKEN USA, Inc., 13102 Moore St., Cerritos, CA90703[sic], which is the address of Defendant UMEKEN."  (*Id*.)

Plaintiff alleges that she was exposed to the advertisements for C-Balance (Chewable) and Pomegranate Balls CoQ10 on www.umekenusa.com and www.famousherbs.com, reviewed them, and purchased the products for $176 in reliance on these advertisements.  (*Id*. ¶¶ 6, 8.)  The advertisements, Plaintiff claims, are false and Umeken's products are misbranded.  (*Id*. ¶ 6.)  Plaintiff alleges that Defendants knew or by the exercise of reasonable care should have known at the time the statements were made that they were untrue or misleading.  (*Id*.)  Plaintiff allegedly would not have purchased these products "if she knew they were illegally marketed as dietary supplements."  (*Id*. at ¶¶ 6, 11, 48–50.)

Plaintiff alleges Umeken's statements were false and misleading based on her personal experience with the products.  Plaintiff alleges that she stopped taking "it" in December 2016 because:

> (1) Pomegranate Plus CoQ10 did not support her skin because she had compared her skin conditions before and after she took the product.  She did not observe any change; (2) Pomegranate Plus CoQ10 did not remove her constant fatigue because her constant fatigue was not cured after she took the product.  She did not measure the level of fatigue because there is no fatigue meter; (3) Pomegranate Plus CoQ10 did not remove her mood changes.  She could not stop taking a prescription drug, Aprazolam, after she took the product; (4) Pomegranate Plus CoQ10 did not remove her insomnia.  She could not stop taking a prescription drug, Aprazolam, after she took the

product; (5) C-Balance (Chewable) did not help reduce spots from her skin. She had visually measured the size of spots before and after she took the product. She did not observe shrinkage of the spots; (6) C-Balance (Chewable) did not help aid reduce wrinkles. She had visually measured the size of spots before and after she took the product. She did not observe shrinkage of the wrinkles.

(*Id.* ¶¶ 10, 77.) Plaintiff also alleges that Umeken's advertisements violate 21 C.F.R. § 101.93 and thus are false or misleading. (*Id.* ¶¶ 9, 31–38.) 21 C.F.R. § 101.93 requires a disclaimer statement to accompany statements on dietary supplement labels that bear a structure or function statement.[2] (*Id.*) Plaintiff alleges that the disclaimers on www.umekenusa.com for both products violate 21 C.F.R. § 101.93(d) and (e) as each disclaimer "is not linked to the structure/function statements with a symbol at the end of each statement" nor does the disclaimer "appear in boldface type." (*Id.* ¶¶ 36–37.) Plaintiff also alleges that Umeken's advertisement for Pomegranate Balls CoQ10 on www.famousherbs.com violates 21 C.F.R. § 101.93 because it does not contain a disclaimer. (*Id.* ¶ 38.)

Plaintiff also alleges that Umeken is an "enterprise" and Mr. Han exercised "substantial control over the affairs of Defendant Umeken enterprise [sic], through . . . (a) Creating and approving marketing and advertising materials; (b) Regularly reviewing financial records; [and] (c) Negotiating and authorizing others to negotiate significant contracts, such as the sales agreement with customers." (*Id.* ¶¶ 57, 59.) Plaintiff alleges that "Defendant HAN's fraudulent intent for the fraudulent claims in the websites can be inferred by the facts that Defendant HAN

---

[2] A structure/function statement is one that "claims a benefit related to a classic nutrient deficiency disease and discloses the prevalence of such disease in the United States, describes the role of a nutrient or dietary ingredient intended to affect the structure or function in humans, characterizes the documented mechanism by which a nutrient or dietary ingredient acts to maintain such structure or function, or describes general well-being from consumption of a dietary nutrient or dietary ingredient." 21 U.S.C. § 343(r)(6)(A).

is the Chief Executive Office, the Secretary, the Director, and the Agent for Service of Process.  Defendant UMEKEN is one-man operation by Defendant HAN.  Defendant HAN is the alter ego of Defendant UMEKEN."  (*Id*. ¶ 59.) Plaintiff also alleges that "Defendant UMEKEN enterprise has an ascertainable structure separate and apart from the pattern of racketeering activity in which Defendant HAN has engaged. Defendant UMEKEN is separate and distinct from Defendant HAN."  (*Id*. ¶ 61.)

On April 21, 2017, Defendants filed a motion to dismiss the original complaint, (Dkt. 16), which the Court granted in part with prejudice and in part with thirty days' leave to amend.  (Dkt. 23).  The Court found that Plaintiff failed to allege fraud with particularity as required by Federal Rule of Civil Procedure 9(b), amongst other pleading deficiencies, and directed the Plaintiff to provide the Court with a coherent complaint asserting viable claims and to cure the deficiencies noted by the Court.  (*Id*. at 17–18.) Plaintiff filed a First Amended Complaint ("FAC") on June 28, 2017.  (Dkt. 25.)  On July 12, 2017, Defendants filed a motion to dismiss the FAC, (Dkt. 26), which the Court granted with thirty days' leave to amend, (Dkt. 29).  The Court again found that Plaintiff failed to plead fraud with particularity and directed the Plaintiff to provide the Court and the litigants a complaint asserting viable claims.  (*Id*. at 8–11.)[3]

Plaintiff, on behalf of herself and all others who purchased C-Balance (Chewable) and/or Pomegranate Balls CoQ10 from Umeken in the United States since December 1, 2012, and the present, (SAC ¶¶ 68–70), now brings eight causes of action in the SAC: (1)

[3] In its previous orders, the Court dismissed with prejudice the following from Plaintiff's original complaint: (1) claims based on thirteen products that she did not purchase, (2) claims based on California law that impose more or inconsistent burdens on manufacturers than the burdens imposed by the FDCA, (3) claims for injunctive relief, (4) claims alleging that or predicated on the allegation that Umeken's advertising of C-Balance (Chewable) and Pomegranate Balls CoQ10 described in paragraph five of the Complaint constitute disease claims, and (5) a Magnuson-Moss Warranty Act claims predicated on a written warranty.  (Dkts. 23, 29.)

violation of California's Unfair Competition Law ("UCL") (unlawful conduct prong), California Business and Professions Code §§ 17200 *et seq.*, (*id.* ¶¶ 78–90); (2) violation of California's UCL (unfair and fraudulent conduct prongs), California Business and Professions Code §§ 17200 *et seq.*, (*id.* ¶¶ 91–97); (3) violation of California's False Advertising Law, California Business and Professions Code §§ 17500 *et seq.*, (*id.* ¶¶ 98–104); (4) violation of California's Consumers Legal Remedies Act ("CLRA"), California Civil Code §§ 1750 *et seq.*, (*id.* ¶¶ 105–10); (5) breach of quasi contract, (*id.* ¶¶ 111–16); (6) violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), (*id.* ¶¶ 117–29); (7) fraudulent misrepresentation, (*id.* ¶¶ 130–37); and (8) negligent misrepresentation, (*id.* ¶¶ 148–55). The seven non-RICO claims are brought against Umeken; the RICO claim is brought against Mr. Han. (*See id.* ¶¶ 138–145.)

Plaintiff seeks compensatory, statutory, and punitive damages, trebled; attorneys' fees; reimbursement of the purchase price paid for Umeken's products; equitable monetary relief, including disgorgement and restitution; the imposition of a constructive trust on Defendants' ill-gotten gains; and awards of pre-judgment and post-judgment interest. (*Id.* at Prayer for Relief.)

## III. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. The issue on a motion to dismiss for failure to state a claim is not whether the claimant will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims asserted. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). When evaluating a Rule 12(b)(6)

motion, the district court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *Moyo v. Gomez*, 32 F.3d 1382, 1384 (9th Cir. 1994). The district court may also consider additional facts in materials that the district court may take judicial notice, *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994), as well as "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading," *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994*), overruled in part on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (stating that while a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, courts "are not bound to accept as true a legal conclusion couched as a factual allegation" (citations and quotes omitted)). Dismissal of a complaint for failure to state a claim is not proper where a plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. In keeping with this liberal pleading standard, the district court should grant the plaintiff leave to amend if the complaint can possibly be cured by additional factual allegations. *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

In federal court, a plaintiff alleging fraud must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1145 (9th Cir. 2009). Under Rule 9(b), the plaintiff must set forth the "who, what, when, where, and how" of the alleged fraud. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). Additionally, "the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading." *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en

banc), *superseded by statute on other grounds as stated in SEC v. Todd*, 642 F.3d 1207,
1216 (9th Cir. 2011).  When an artificial entity is the alleged perpetrator of the fraud, the
plaintiff must "allege the names of the persons who made the allegedly fraudulent
representations, their authority to speak, to whom they spoke, what they said or wrote,
and when it was said or written."  *UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*, 117
F. Supp. 3d 1092, 1107 (C.D. Cal. 2015).

## IV. DISCUSSION

All of Plaintiff's claims rely on allegations of fraud.[4]  Defendants argue that
Plaintiff again has failed to plead fraud with particularity as required by Rule 9(b).  (*See
generally* Mot.)  The Court agrees.  Plaintiff's failure to plead fraud with particularly is
fatal to all of her claims.[5]

---

[4] Plaintiff argues that her claim under the UCL "unlawful" prong is not subject to Rule 9(b).  (SAC ¶
79.)  However, "Rule 9(b)'s heightened pleading standards apply to claims for violations of the CLRA
and UCL."  *Kearns,* 567 F.3d at 1125.  "This is true even for UCL claims brought under the 'unlawful'
and 'unfair' prongs that allege fraudulent conduct."  *Eckler v. Wal-Mart Stores, Inc.*, No. 12-CV-727-
LAB-MDD, 2012 WL 5382218, at *5 (S.D. Cal. Nov. 1, 2012) (citing *Kearns*, 567 F.3d. at 1127).
Plaintiff also argues that the "reasonable consumer standard" applies to her FAL, UCL, and CLRA
claims.  (Dkt. 35 [Plaintiff's Opposition, hereinafter "Opp."] at 4–7.)  The "reasonable consumer
standard" is a substantive requirement for Plaintiff's claims, and because Plaintiff must first plead her
claims with particularity pursuant to Rule 9(b), the Court declines to assess whether Plaintiff states a
claim under the reasonable consumer standard.  *See, e.g., Arroyo v. Pfizer, Inc.*, No. C-12-4030 EMC,
2013 WL 415607, at *10 (N.D. Cal. Jan. 31, 2013) ("Because the Court determines that Plaintiff's
amended complaint fails to satisfy the threshold requirements of Rules 8(a) and 9(b), the Court need not
reach Defendant's alternate arguments that [the plaintiff's] claims fail to satisfy the 'reasonable
consumer' standard").
[5] Plaintiff's RICO claim also suffers from other pleading deficiencies.  Her allegations fall short of the
required showing of Mr. Han's fraudulent intent.  "In order to prove a violation of 18 U.S.C. § 1341,
there must be a showing of a specific intent to defraud.  The intent to defraud may be inferred from a
defendant's statements and conduct."  *United States v. Peters,* 962 F.2d 1410, 1414 (9th Cir.1992).  "In
the absence of direct evidence of intent, the party asserting fraud must first prove 'the existence of a
scheme which was reasonably calculated to deceive persons of ordinary prudence and comprehension,'
and then, 'by examining the scheme itself' the court may infer a defendant's specific intent to defraud."
*Eclectic Properties E., LLC*, 751 F.3d at 997(quoting *United States v. Green,* 745 F.2d 1205, 1207 (9th
Cir. 1984) (internal quotation marks omitted)).  Plaintiff has made insufficient allegations of the
existence of such a scheme.  Also, Plaintiff now pleads that Mr. Han is the alter ego of Umeken, which
runs afoul of the RICO statute requirement that the alleged RICO "enterprise" is separate from the RICO

### A. *Pomegranate Plus CoQ10*

Plaintiff alleges that Umeken's statements on its website as well as www.famousherbs.com about Pomegranate Plus CoQ10 are false or misleading.  Plaintiff quotes specific statements, (SAC ¶ 5), and provides screenshots from the Pomegranate Plus CoQ10 product page on Umeken's website and www.famousherbs.com.  (SAC Exs. 2, 3.)  The statements cited in paragraph 5 of the SAC only appear on www.famousherbs.com.  (*Compare* SAC ¶ 5 *with* Exs. 2, 3.)  Plaintiff did not allege in the body of the SAC which statements appear on each website as the Court requested in its last order.  (Dkt. 29 at 9.)  Defendants argue that Plaintiff has not alleged facts suggesting that Umeken controlled or placed the cited statements about Pomegranate Plus CoQ10 on www.famousherbs.com.  (Mot. at 9–11.)  The Court agrees.

Plaintiff added the following additional allegations to the SAC in an attempt to demonstrate that Umeken controlled and placed the statements about Pomegranate Plus CoQ10 on www.famousherbs.com:

> Reasonable consumers knew that Defendants controlled or placed the cited statements about Pomegranate Balls CoQ10 on www.famousherbs.com. The website refers to "Umeken USA Information Booklet, 'Nature is Healer.'" The website refers to www.umekenusa.comand UMEKEN USA, Inc. 13012 Moore St., Cerritos, CA90703, which is the address of Defendant UMEKEN.  Google and Amazon websites directs to the fraudulent misrepresentations linked to www.umekenusa.comand www.famousherbs.com.  Therefore, Defendant UMEKEN is liable for statements on those websites.

---

defendant.  *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1396 (9th Cir. 1986) (noting that "courts have consistently held that in an action under section 1962(c) the 'person' must be a separate and distinct entity from the 'enterprise.'").

(SAC ¶ 5.)[6]  While the product page for Pomegranate Plus CoQ10 on www.famousherbs.com may refer to "Umeken USA Information Booklet, 'Nature is Healer,'" Plaintiff has not alleged that the cited statements are quotes from this booklet, that Umeken placed the statements on www.famousherbs.com, or even that Umeken wrote "Nature is Healer."  Although www.famousherbs.com refers to www.umekenusa.com and Umeken's physical address, a mere textual reference on a website in no way supports the allegation that Umeken placed any statements on the page itself.  Lastly, the Court cannot make sense of the allegation that "Google and Amazon websites directs to the fraudulent misrepresentations linked to www.umekenusa.com and www.famousherbs.com."[7]  If the Court construes this to mean that if a person were to search for Pomegranate Plus CoQ10 on either Google or Amazon that both www.umekenusa.com and www.famousherbs.com would appear in the search results, it is far-fetched to argue that any website that appears on a search engine when a customer looks at a product is controlled by the product's manufacturer.[8]

Plaintiff has not alleged that Umeken owns, operates, or controls www.famousherbs.com.  If Plaintiff's allegations are construed to claim that Umeken controls www.famousherbs.com, this allegation is belied by the fact that this website sells products from a variety of companies, not just Umeken.  (SAC Ex. 3 [left hand column].)  Plaintiff's exhibit raises the inference that

---

[6] These allegations were not in the FAC.  (*Compare* FAC ¶ 5.)  Plaintiff, in opposing Defendants' previous motion to dismiss, referred in her argument to Exhibit 3 attached to the SAC to point out these same references to Umeken on www.famousherbs.com.  (Dkt. 27 at 16.)  Plaintiff has merely integrated that argument into the SAC as an allegation and added her allegation regarding Google and Amazon.

[7] Plaintiff also indicates that statements made on "google and amazon websites" are included in her fraud claim.  (SAC ¶ 77.)

[8] Plaintiff argues in her opposition that the fact both www.umekenusa.com and www.famousherbs.com display the same advertising testimonials indicates that Umeken controls the latter.  (Opp. at 3, 9–10.)  These allegations do not appear in the SAC.  (*See generally* SAC.)  Like the presence of Umeken's website and physical address on www.famousherbs.com, the fact that these testimonials appear does not sufficiently demonstrate that Umeken controlled or placed the statements on the website.

www.famousherbs.com is a distributor of dietary supplements from many companies, rather than Umeken's website.  Plaintiff's allegations amount to arguing that because the Defendant's name, address, and purported publication title appear on a website, the Defendant controls the statements made on that website. It is not reasonable to infer that whenever a company's name, address, and publication appear on a website, the company controls the website.  Without more, Plaintiff has failed to sufficiently allege that the cited Statements were Defendant's own.

Despite the Court's explicit direction, Plaintiff again has made conclusory allegations that Umeken made the cited statements about Pomegranate Plus CoQ10.  She has failed to alleged facts with specificity that could identify Umeken as having made the alleged statements about Pomegranate Plus CoQ10.  *See Swartz v. KPMG LLP,* 476 F.3d 756, 764 (9th Cir. 2007) ("Federal Rule of Civil Procedure 9(b) requires more specificity including an account of the 'time, place, and specific content of the false representations as well as the *identities of the parties to the misrepresentations*.'  'To comply with Rule 9(b), allegations of fraud must be *specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud* charged so that they can defend against the charge and not just deny that they have done anything wrong.'") (citations omitted).  Plaintiff has failed to allege any statement that Umeken made about Pomegranate Plus CoQ10 in the SAC.

Plaintiff's allegations about Pomegranate CoQ10 also fail to plead with particularity why Defendant's statements were false.  Plaintiff alleges that Umeken made four fraudulent statements about Pomegranate CoQ10 on www.famousherbs.com and their website www.umekenusa.com: (1)"Recommended for women experiencing menopausal symptoms," (2) "Supports

women health and their skin," (3) "Middle-aged women can experience a decline of estrogen secretion, but now they can unlock the secret to beautiful skin and beautiful health - Umeken's Zakuro Balls," (4) "Women entering menopause, those who have skin troubles, constant fatigue, mood changes, and those experiencing menopausal symptoms, such as hot flashes, irregular menstruation, decrease in sexual appetite, and insomnia." (SAC ¶ 5.) Plaintiff concedes in her SAC that "[n]o scientists have conducted scientific studies to disprove" the claims made in Umeken's statements. Plaintiff alleges that Umeken's statements were false based on her anecdotal experience with the product:

> (1) Pomegranate Plus CoQ10 did not support her skin because she had compared her skin conditions before and after she took the product. She did not observe any change; (2) Pomegranate Plus CoQ10 did not remove her constant fatigue because her constant fatigue was not cured after she took the product. She did not measure the level of fatigue because there is no fatigue meter; (3) Pomegranate Plus CoQ10 did not remove her mood changes. She could not stop taking a prescription drug, Aprazolam, after she took the product; (4) Pomegranate Plus CoQ10 did not remove her insomnia. She could not stop taking a prescription drug, Aprazolam, after she took the product.

(SAC ¶ 10.) [9] Plaintiff's anecdotal allegations to prove the falsity of Umeken's statements are insufficient for several reasons.

First, there is a logical disconnect between what Umeken represented about its product and what Plaintiff alleges the product did not do. Plaintiff alleges that Pomegranate CoQ10 Plus did not "remove" her fatigue, mood changes, and insomnia, while the statements on www.famousherbs.com said that the product would "reduce" these health issues. That Pomegranate Plus CoQ10 did not

---

[9] The FAC alleged that Plaintiff stopped taking the product "because (1) Pomegranate Plus CoQ10 did not support her skin, (2) Pomegranate Plus CoQ10 did not remove her constant fatigue, (3) Pomegranate Plus CoQ10 did not remove her mood changes, (4) Pomegranate Plus CoQ10 did not remove her insomnia. [sic]." (FAC ¶¶ 10, 77.)

"remove" a condition does not make a statement that the product will "reduce" the condition false.  Plaintiff ignored the Court's advice to cure this same problem in her FAC.  (Dkt. 29 at 10.)  In her opposition, Plaintiff outright argues that she did not have to change this language because "[t]riers of fact will decide" how the terms "remove" and "cure" could be interpreted by reasonable consumers.  (Opp. at 14.)  Plaintiff also refers to Umeken's statements as "outright non-sense claims of cure-all" elsewhere in her argument.  (*Id*. at 23.)  The *specific claims* made in Umeken's statements matter, and simply because the Plaintiff construed the statements as guaranteeing a "cure-all" for her ailments does not mean the Court will indulge in this unsupported interpretation.

Second, Plaintiff's allegations that "Pomegranate Plus CoQ10 did not support her skin because she had compared her skin conditions before and after she took the product" and "[s]he did not observe any change" are not sufficiently particular and at bottom are the equivalent of Plaintiff alleging that the product "did not work."  *See, e.g.*, *Aloudi v. Intramedic Research Grp., LLC*, 2015 WL 4148381, at *5 (N.D. Cal. July 9, 2015) (dismissing a plaintiff's claims that a dietary supplement did not "work as advertised" or "provide any of the promised benefits" as insufficient under Rule 9(b))); *Deutsch v. Flannery*, 823 F.2d 1361, 1365 (9th Cir. 1987) ("[A] pleading satisfies the particularity requirement [of Rule 9(b)] if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." (internal quotation marks omitted)).  Plaintiff, despite receiving two opportunities to amend with direction to make this specific allegation more particular, has failed to add *any detail* to her allegations.

The Court is left to speculate what skin conditions Plaintiff refers to, what kind of change she was expecting, what she visually inspected, whether a visual

inspection would reveal any difference, if she used Pomegranate Plus CoQ10 as directed, if other factors affected the efficacy of the products, amongst other variables that would impact the plausibility of Plaintiff's claims.  Without concrete details about her experience, Plaintiff has failed to adequately allege why Umeken's statements were false when made.  *Compare to Davidson v. Kimberly-Clark Corp.*, No. 15-16173, 2017 WL 4700093, at *5 (9th Cir. Oct. 20, 2017) (holding that the plaintiff adequately alleged why the term "flushable" was false based on her personal experience that the "flushable" wipes did not disperse and disintegrate within seconds or minutes of flushing, but took "'hours to break down' or disperse, creating a risk that the wipes will damage plumbing systems, septic tanks, and municipal wastewater treatment facilities" and defined "flushable" as "'suitable for being flushed," which requires an item to be capable of dispersing within a short amount of time."  The defendant's website also represented that the flushable wipes "are flushable due to patented technology that allows them to lose strength and *break up when moving through the system after flushing*.")

Third, Plaintiff's fraud allegations are facially deficient because Umeken's statement that Pomegranate Plus CoQ10 "supports" a person's skin does not make any *particular* claims about the health effects of the product.  That Pomegranate Plus CoQ10 "supports" skin is an imprecise claim that is difficult to measure or construe as a guarantee about a certain result.  Unlike a statement that makes a quantifiable or measureable claim, whether Pomegranate Plus CoQ10 "support[ed]" Plaintiff's skin is almost impossible to prove or disprove with anecdotal evidence, and would likely require some form of scientific proof.  *Compare to Kwan v. SanMedica Int'l, LLC*, No. 14-CV-03287-MEJ, 2015 WL 848868, at *2 (N.D. Cal. Feb. 25, 2015), *aff'd sub nom. Kwan v. SanMedica Int'l*, 854 F.3d 1088 (9th Cir. 2017) (hypothesizing that the plaintiff could allege that she herself did not experience a 682% mean increase in HGH levels when using the product).

"To comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (internal quotation and citation omitted). Plaintiff's bare bones story does not raise the inference that Umeken's statements were false or misleading nor does it provide Defendants notice of the particular way that Plaintiff experienced the product. Plaintiff has failed to state a claim for fraud regarding Pomegranate Plus CoQ10 due to the lack of particularity in Umeken's alleged statements as well as in Plaintiff's experience with Pomegranate Plus CoQ10.

### B. C-Balance (Chewable)

Plaintiff alleges that Umeken made two fraudulent statements about C-Balance (Chewable) on its website www.umekenusa.com: that C-Balance (Chewable) "[h]elps you maintain beautiful, firm skin, and helps reduce spots from your skin," and it "[h]elp aid reduce wrinkles." (SAC ¶ 5.)[10] Plaintiff concedes in her SAC that "[n]o scientists have conducted scientific studies to disprove" the claims made in Umeken's statements. Defendants argue that Plaintiff has not adequately alleged that either of these statements are false or misleading and that her anecdotal evidence is not sufficiently particular to support her claims. (Mot. at 12–15.) The Court agrees. Plaintiff's anecdotal allegations about C-Balance (Chewable) are insufficient for the same reason as her allegations regarding Pomegranate Plus CoQ10.

---

[10] Plaintiff attaches a product page from www.umekenusa.com for C-Balance (Chewable) that has slightly different statements. (Compare SAC ¶ 4 with Ex. 1.) This discrepancy concerns the Court, but is not dispositive in the Court's analysis.

Plaintiff again has failed to explain her experience with C-Balance (Chewable) in sufficiently particular detail.[11]  Plaintiff describes how "C-Balance (Chewable) did not help reduce spots from her skin" and "did not help aid reduce wrinkle," (FAC ¶ 10), and her SAC adds the allegations that she "visually measured" the spots and wrinkles on her skin before and after using C-Balance (Chewable) and that "she did not observe shrinkage" of either her spots or wrinkles, (SAC ¶ 10).  Plaintiff's anecdotal allegations about C-Balance (Chewable) are not sufficiently particular and at bottom are the equivalent of Plaintiff alleging that the product "did not work."  *See, e.g.*, *Aloudi*, 2015 WL 4148381 at *5.  Plaintiff, despite receiving two opportunities to amend with direction to make this specific allegation more particular, has failed to add *any detail* to her allegations.  The Court is left to speculate if her spots and wrinkles were big enough that a visual measurement would reveal any difference, if she used C-Balance (Chewable) as directed, if other factors affected the efficacy of the products, amongst other variables that would impact the plausibility of Plaintiff's claims.  Without concrete details about her experience, Plaintiff has failed to adequately allege why Umeken's statements were false when made.

Plaintiff's fraud allegations are facially deficient for another reason.  Umeken's statements about C-Balance (Chewable) do not make *particular* claims about the health effects of the product.  That C-Balance (Chewable) "helps" with skin conditions is an imprecise claim that is difficult to measure or construe as a guarantee about a certain result.  Unlike a statement that makes a quantifiable or measureable claim, whether C-Balance (Chewable) "help[ed]" Plaintiff's skin is almost impossible to prove or disprove with anecdotal evidence, and would likely require some form of scientific proof.  *Compare to Kwan*, 2015 WL 848868 at *2.

---

[11] The FAC alleged that Plaintiff stopped taking the product "because . . . (5) C-Balance (Chewable) did not help reduce spots from her skin. [sic] (6) C-Balance (Chewable) did not help aid [sic] reduce wrinkles."  (FAC ¶¶ 10, 77.)

Plaintiff provides another bare bones story about her use of C-Balance (Chewable) that does not raise the inference that Umeken's statements were false or misleading nor does it provide Defendants notice of the particular way that Plaintiff experienced the product.  Plaintiff has failed to state a claim for fraud regarding C-Balance (Chewable) due to the lack of particularity in Umeken's alleged statements as well as in Plaintiff's experience with C-Balance (Chewable).[12]

*C. Plaintiff's Defective Disclaimer Theory*

Plaintiff also alleges that Umeken's advertisements on www.umekenusa.com violate 21 C.F.R. 101.93(d) and (e) by failing to link specific statements to a disclaimer with a symbol at the end of each statement and because the disclaimer does not appear in "boldface type."  (SAC ¶¶ 36–37.)[13]  Umeken's C-Balance (Chewable) web page has a disclaimer at the end of the product description which is linked to the last statement in the product description by an asterisk, but no asterisk appears after the statement "Helps you maintain beautiful, firm skin, and helps reduce spots from your skin."  (SAC ¶ 36, Ex. 1.) Umeken's Pomegranate Plus CoQ10 web page has a disclaimer appears at the end of the product description which is linked to the last statement in each product description paragraph by an asterisk, but no asterisk appears after the statement "Co-enzyme Q10 has had the spotlight in Korea and Japan for its positive effects on the skin."  (SAC ¶ 37, Ex. 2.)  Plaintiff alleges that although the required disclaimer appeared on each product page,

---

[12] Plaintiff added an allegation to her SAC that there is "no credible scientific evidence that [Defendants'] products . . . do what website claims [sic]," which raises a lack of substantiation claim. (SAC ¶ 6.)  It is "firmly established law" that "neither the UCL nor the CLRA provides [Plaintiff] with a private cause of action to enforce the substantiation provisions of California's unfair competition or consumer protection laws."  *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017).  Plaintiff cannot bring a lack of substantiation claim as a matter of law.

[13] Plaintiff also alleges the same violations for "Defendant Umeken's advertisement in www.famousherbs.com."  (SAC ¶ 38.)  As the Court previously held, Plaintiff has not alleged sufficient facts to indicate that Umeken made, controlled, or placed the statements about Pomegranate Plus CoQ10 on www.famousherbs.com, thus it is irrelevant whether the appropriate disclaimer appeared on www.famousherbs.com.

that the disclaimers were "inconspicuous" and "nonprominent," causing her to
erroneously believe that Umeken's claims were "endorsed by the FDA," and had
Umeken's website properly directed Plaintiff to the disclaimer, she would not have
purchased the products.  (SAC ¶ 11.)

California's consumer protection statutes render statements actionable which,
although not technically false, have a tendency to mislead consumers because the
statements fail to disclose or direct the consumer's attention to other relevant
information.  *See Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1162 (9th Cir.
2012).  Plaintiff does not claim that a violation of 21 C.F.R. 101.93(d) or (e) is
independently actionable.  Rather, Plaintiff argues that Umeken's alleged violation of 21
C.F.R. 101.93(d) and (e) make Umeken's statements false or misleading.  In order for the
defective disclaimer to be actionable, the statements Plaintiff points to must make a false
or misleading statement on their own that would require a disclaimer to correct.

Plaintiff has not alleged why any of Umeken's statements were false or misleading
on their own, as discussed above.  Moreover, the statements Plaintiff points to, on their
face, make no representation about the product being endorsed by the FDA or even
mention government approval.  Plaintiff makes no allegations explaining why the cited
statements, without a disclaimer, made her believe the product was endorsed by the FDA.
Without the statement containing false or misleading material, there is nothing that the
FDA disclaimer could correct.  While placing an asterisk next to a specific statement may
have directed Plaintiff's attention to the FDA disclaimer, there is nothing in the statement
itself to indicate it is endorsed by the FDA.  *See K & N Eng'g, Inc. v. Spectre
Performance*, No. EDCV 09-01900-VAP, 2011 WL 6133258, at *6 (C.D. Cal. Dec. 8,
2011) (noting that the disclaimer was "insufficient to correct the false statements" made
by the defendant); *Am. Specialty Health Grp., Inc. v. Healthways, Inc.*, No. 11-CV-02819
BEN KSC, 2012 WL 4863779, at *5 (S.D. Cal. Oct. 12, 2012) ("Disclaimers or

qualifications in any particular ad are not adequate to avoid liability unless they are sufficiently prominent and unambiguous *to change the apparent meaning of the claims and to leave an accurate impression*.") (emphasis added) (quoting *Removatron Int'l Corp. v. F.T.C.*, 884 F.2d 1489, 1497 (1st Cir. 1989)). Additionally, Plaintiff has not alleged why any of Umeken's statements were false or misleading *because of a defective disclaimer*. Plaintiff provides no reason why the absence of an asterisk by specific statements made her believe that the product was endorsed by the FDA. Plaintiff fails to allege *why* the cited statements were false or misleading or *why* the defective disclaimer made the cited statements false or misleading.[14]

//
//
//
//
//
//
//
//
//

---

[14] Plaintiff's defective disclaimer allegations are also problematic because her theory is implausible. Plaintiff's alleges that had there been more asterisks in the product description or had the disclaimer appeared in boldface she would have noticed the disclaimer below. If Plaintiff read the product description and was not alerted to the disclaimers by the asterisks that were *already present*, there is no reason to think more asterisks elsewhere in the description or putting the disclaimer in boldface would have drawn her attention to the disclaimer. The Court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001). *See Krommenhock v. Post Foods, LLC*, 255 F. Supp. 3d 938 (N.D. Cal. 2017) (holding that there was nothing misleading about statements regarding the protein content of cereal when the disclosure immediately followed the statement and was approximately the same type as the statement although the plaintiff alleged the disclosures were "ineffective" because "the eye naturally catches only the large '[ ] PROTEIN' representation."); *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1101 (N.D. Cal. 2017) (same).

**V.  CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. [15] Because Plaintiff has had three opportunities to plead fraud with particularity and still fails to adequately state a claim,[16] Plaintiff's individual claims are DISMISSED WITH PREJUDICE.  *See Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008) ("The decision of whether to grant leave to amend nevertheless remains within the discretion of the district court, which may deny leave to amend due to" reasons which include "repeated failure to cure deficiencies by amendments previously allowed").  In light of this dismissal, Plaintiff's class allegations are DISMISSED WITHOUT PREJUDICE.

DATED:    October 26, 2017

_____
CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE

---

[15] Defendants also bring a motion to strike Plaintiff's class allegations.  (Mot. at 22–25.)  In light of the Court's dismissal of Plaintiff's individual claims, Defendants' motion to strike is DENIED as moot.

[16] Plaintiff's opposition, in large part, merely copy and pastes language from the SAC, copies portions of Defendants' motion arguments and responds that statements are not true, or attacks the credibility of opposing counsel.  (*See generally* Opp.)  Plaintiff's lack of responsive argument troubles the Court and gives it pause to grant Plaintiff leave to amend again.  Moreover, Plaintiff neither requests leave to amend nor indicated how she would amend her SAC if given the opportunity nor requests leave to amend.  (*Id.*)